## HINES v. McCOY.

(Division B. Feb. 11, 1935.)

[159 So. 306. No. 31545.]

154

**R. R. Dinsmore** and **D. G. Fountain**, both of Jackson, for appellant.

Stevens & Currie, of Hattiesburg, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

Frank T. Hines, administrator of veterans' affairs, through his attorneys, filed a petition in the chancery court of Forrest county, Miss., where the estate of Homer Hope Burrow, non compos mentis, a war veteran, was being administered, alleging that J. N. McCoy had erroneously taken credit for one thousand three hundred dollars paid to him for attorneys' fees. That although said order of the court states that the fee was allowed for legal services rendered to the estate and to the guardian of the estate, the petitioner charged that the greater proportion of the said one thousand three hundred dollars was for services rendered said guardian in establishing a claim for insurance against the United States government on the contract of insurance issued, during the period of service in the United States Army of the said Homer Hope Burrow; that no suit was required to be brought against the government on said contract, the claim having been paid without suit; that the World War Veterans' Act (sec. 500, as amended [38 U. S. C. A., sec. 551]) limits attorneys' fees for such service to a maximum of ten dollars, and petitioner further charged that any part of said one thousand three hundred dol-

lars over and above ten dollars was illegal. Petitioner further said that the attorneys were entitled to a reasonable fee for their services to the estate only, but were not entitled to more than ten dollars for services connected with the recovery made on the ward's war risk insurance; that a reasonable fee for their service to the estate, including the presentation of the second annual account, petition for special allowances and the statutory fee of ten dollars, will equal three hundred sixty dollars; that if the difference between one thousand three hundred dollars and the reasonable fee of three hundred sixty dollars, or nine hundred forty dollars, was allowed these attorneys, the same was illegal and prohibited by statute. Petitioner objects to the allowance of one thousand three hundred dollars, giving as his reason therefor that the fee allowed is so excessive as to be inequitable and unconscionable, and prayed the petition be received and filed, and that process issue to J. N. McCoy commanding him to answer, plead, or demur, but not under oath, and also prayed that the court enter an order surcharging the guardianship account with eight hundred forty dollars, or so much of the one thousand three hundred dollars as was paid them for services to the guardian or estate in connection with the claim for insurance on the ward's contract, or otherwise fix a reasonable fee for legal services rendered the estate and surcharge the guardianship account with the excess over and above a reasonable and equitable fee for legal services rendered to the estate or guardian. To this petition were attached the accounts filed, the orders of the court below showing the allowance, the petitions for the allowance, and other items allowed by the court to the guardian.

The petition was demurred to on the grounds (1) that there was no equity on its face; (2) that the allegations of the petition were not sufficient to state a cause of complaint against said defendant; and (3) that the complainant was without capacity to sue or maintain said action.

The demurrer was sustained and an appeal was allowed by the chancellor to settle the principles.

The petition for the allowance of the guardian's account made a part of the petition here set forth, in general terms, that Homer Hope Burrow and his wife, Irene Burrow, lived on a farm on which they moved in 1929 and on which they have continually lived since; that they purchased same from the Federal Land Bank, and that when they purchased, it was in run down condition, having no fences or waterworks, and the residence was an old house made of logs, very much dilapidated and in need of repairs in order to furnish a living place for them; that Homer Hope Burrow, non compos mentis, and his wife, Irene Burrow, took charge of said place and have continually improved said property until it is now worth around three thousand dollars; that they have built fences and have also built a suitable home in which to live, and have incurred other expenses in equipment, fertilizer, etc., including a Ford car for the transportation of the persons from place to place. These expenditures of money were allowed, the total thereof amounting to two thousand fifty-three dollars and sixty cents. It was then alleged that the guardian had received nine thousand six hundred sixty dollars for Homer Hope Burrow, non compos mentis, on his insurance policy taken out during the War and that the guardian was entitled to a reasonable fee for his services, and that the attorneys for said guardian had worked diligently and faithfully on this estate, and, by reason thereof, were entitled to the fee of one thousand three hundred dollars.

The decree specifies various items other than the fee and allows the attorneys' fee of one thousand three hundred dollars.

The account filed with the papers of the guardianship, including such allowance, shows that there was received, from all sources, the sum of eleven thousand seven hundred twenty eight dollars and thirty-six cents, and ex-

penditures, including the purchase of the farm for one thousand two hundred fifty dollars, state bonds for five thousand dollars, etc., and attorneys' fees, amounting to eleven thousand three hundred fifty-four dollars and thirty-seven cents, leaving a balance of three hundred seventy-three dollars and ninty-nine cents. It will be noted that in this account the attorneys' fees are fixed at one thousand three hundred dollars, but the services are not specified, and it did not show whether or not any part of it was for services rendered in procuring money from the United States government.

The main argument in justification of the allowance of the one thousand three hundred dollars fee, and the chancellor's act in sustaining the demurrer to the petition of Hines, the administrator of veterans' affairs, is that the chancery court is not controlled by the federal authorities in the administration of estates, after the money has passed into the hands of the guardian, and that the federal administrator has no standing to intervene and question any act done in the administration, because he has no such interest as would warrant his intervening, and that it would be a meddling by bureaus of the federal government to allow a federal administrator to control the state courts.

We do not think this contention can be maintained. There is no effort, as we understand the proceeding here, for the federal government to undertake to control the state court, but the government seeks to see that the money allowed to war veterans through insurance is properly and economically administered. The federal government has the right to provide, as a condition of the policies and the allowances, as it has provided, that not more than a given amount (ten dollars) shall be allowed for procuring the money from the government for war veterans. If a suit is necessary, the federal act provides that same may be brought in a federal court, and that that court may allow a reasonable attorneys' fee.

There is nothing in the petition by the guardian for the allowance showing that the chancellor entered any finding that the one thousand three hundred dollars, or any part of it, was allowed by the federal government for services rendered in procuring the insurance. On the contrary, the federal administrator shows that there was no such proceeding.

The United States has a standing in the courts of this state to assert any rights it has, or may have, of a justiciable nature.

It appears to us that, by the rules of comity, the veterans' administrator should be permitted to come into court and challenge any improper allowance of the money received from the government. It certainly would not be contrary to public policy so to do. Our state Legislature has recognized the rights of some agencies, other than the guardian or wards, to receive money and participate in the administration of estates. Chapter 175, Code 1930 (sec. 7328 et seq.), provides for the "state service commissioner" to assist all war veterans in receiving compensation from the United States, and provides for the appointment of guardians. Sec. 7343 of said chapter provides that said guardians shall file annual accounts showing all money received by him from the federal bureau, his disbursements, and the balance in his hands at such date, and how invested, and send certified copies of such accounts to the bureau having jurisdiction over the area in which such court is located. Sec. 7347 provides that a guardian shall not apply any portion of his ward's estate for the support of any other person than his ward, except upon an order of the court. Sec. 7348 provides that copies of such records shall be furnished the federal bureau without charge when same shall become necessary. . Sec. 7351 provides that this article shall be construed liberally to secure the beneficial purposes thereof.

Considering all the provisions of this chapter, we think that it is, not only, not contrary to public policy,

but is authorized by statute, in the administration of veterans' affairs, to co-operate with the federal government and to give the federal administrator full knowledge of what is being done with such estates, from time to time, and, by implication, to admit him to come into court and challenge what may be deemed an improper or extravagant allowance.

The appellant, therefore, was authorized to intervene and challenge the allowance. Under the allegations of the petition of Frank T. Hines, to which the demurrer was allowed, the fee was clearly excessive, and there was no specification of items in the administrator's petition for allowance showing what the services were for, whether they were for procuring the money from the government, or whether for filing of the two annual accounts. We think the allegations of the petition were sufficient to require an answer, and the court should hear evidence on both sides and determine the cause in the light of such hearing.

The judgment of the court below, therefore, will be reversed, the demurrer overruled, and the cause remanded with leave to answer within thirty days after the mandate reaches the lower court.

Reversed and remanded.